UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUZANNE ALFONSO, STEVEN SLATER, JOSHUA ADKINS, ROBERT DUQUETTE, *individuals and on behalf of those similarly situated*,<br>    *Plaintiffs*,<br><br>    v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC.,<br>    *Defendant*. | 3:21-CV-1644 (SVN)<br><br><br><br>September 29, 2022 |

**RULING AND ORDER ON PLAINTIFFS' MOTIONS TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSE, MODIFY THE SCHEDULING ORDER, AND <u>AMEND THE COMPLAINT</u>**

Sarala V. Nagala, United States District Judge.

In this labor dispute, four individual Plaintiffs seek to represent a class of employees at four warehouses operated by Defendant, FedEx Ground Package System, Inc., a corporation that operates several shipping warehouses throughout Connecticut. Plaintiffs contend that they were not compensated for the time it took them to pass through mandatory security screenings to enter and exit each warehouse several times per day, in violation of the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq.* Defendant, incorporated and headquartered out of state, removed the action to federal court under the Class Action Fairness Act, 28 U.S.C. § 1453 *et seq.*

While discovery has progressed, Plaintiffs have filed several motions directed to the pleadings. First, Plaintiffs move to strike an affirmative defense raised in Defendant's answer pursuant to Federal Rule of Civil Procedure 12(f). ECF No. 23. Second, Plaintiffs move to amend their complaint to add allegations pertaining to two additional warehouses about which they learned during the course of discovery. ECF No. 35. Relatedly, Plaintiffs request a *nunc pro tunc*

modification of the Scheduling Order, which affects the legal standard governing the motion to amend the complaint. ECF No. 39.

For the following reasons, the Court DENIES Plaintiffs' motion to strike, ECF No. 23; GRANTS their motion to modify the Scheduling Order, ECF No. 39; and GRANTS their motion to amend the complaint, ECF No. 35.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following brief factual background set forth in the original complaint, ECF No. 1 at 25, is relevant to the present motions. Plaintiffs are current and former Connecticut employees of Defendant. Suzanne Alfonso has been employed for thirty-two years at Defendant's warehouse located in Willington. Compl. ¶ 6. Plaintiff Steven Slater was employed by Defendant for one year, first at its warehouse located in South Windsor, and then at its warehouse located in Middletown. *Id.* ¶ 7. Plaintiff Joshua Adkins was employed for eleven months at Defendant's warehouse located in Willington. *Id.* ¶ 8. Plaintiff Robert Duquette was employed by Defendant for seventeen months, first at its warehouse in located in Windsor, and then at its warehouse located in Middletown. *Id.* ¶ 9.

Plaintiffs generally allege that they were required to undergo mandatory security screenings at each of the four identified warehouses multiple times per day, and that they were not compensated for the time it took them to pass through those screenings. For example, at the Willington warehouse, Plaintiffs Alfonso and Adkins were permitted to clock in for work only after they submitted their belongings to pass through a search and a metal detector and then traversed a substantial distance of the premises. *Id.* ¶¶ 19–20. Likewise, they were required to clock out before passing through the same security screening to leave the premises at the conclusion of their shift. *Id.* ¶ 22. Moreover, their one-hour unpaid lunch break was effectively

made shorter by the time it took them to go through the security screening when leaving and returning to the premises. *Id.* ¶ 21. Plaintiffs allege that similar procedures were in place at the Middletown and South Windsor warehouses. *Id.* ¶ 23. They contend that each screening took between five and fifteen minutes, which added up to over one hour and fifteen minutes per week. *Id.* ¶ 24. They were not compensated for this time, either in straight time or overtime. *Id.*

In November of 2021, Plaintiffs brought the present class action in state court, claiming that Defendant's failure to properly compensate them and the other employees in the class violated the CMWA. Defendants timely removed the action to federal court. ECF No. 1. The Court entered a Scheduling Order, ECF No. 19, incorporating many of the deadlines requested by the parties' Rule 26(f) Report, ECF No. 18. Relevant here, the Court set a deadline of January 31, 2022, for Plaintiffs to amend the complaint, and advised that any motion to amend the pleadings filed by Plaintiffs after that date would be governed by the good cause standard of Federal Rule of Civil Procedure 16(b). ECF No. 19 at 1. Soon thereafter, Defendant filed its answer. ECF No. 20.

In February of 2022, Plaintiffs filed a motion to strike one of the affirmative defenses Defendant raised in its answer. ECF No. 23. At the parties' request, the Court held the motion in abeyance while they engaged in settlement discussions with U.S. Magistrate Judge Richardson. ECF No. 30. In May of 2022, Plaintiffs filed a motion to amend the complaint, seeking to add similar allegations pertaining to Defendant's Wallingford and Stratford warehouses. ECF No. 35. For judicial efficiency, the Court likewise held this motion in abeyance pending the parties' settlement discussions. The settlement conference, held earlier this month, did not result in settlement. ECF No. 47. Accordingly, both of these motions, as well as Plaintiffs' related motion to modify the Scheduling Order, ECF No. 39, remain pending.

## II. PLAINTIFFS' MOTION TO STRIKE

Plaintiffs seek to strike from Defendant's answer its fourteenth affirmative defense, which states: "Some or all of Plaintiffs' claims . . . are barred, in whole or in part, to the extent that their claimed compensable activities were preliminary or postliminary activities." Ans., ECF No. 20 at 12. Specifically, Plaintiffs acknowledge that this defense is available against claims that an employer violated the Fair Labor Standards Act ("FLSA"), as amended by the Portal-to-Portal Act, 29 U.S.C. § 254(a). Plaintiffs assert, however, that the CMWA has no comparable defense, and, accordingly, this defense is not available against their claims that Defendant violated the CMWA. ECF No. 23-1 at 5.

### A. Legal Standard

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because striking a pleading is a "drastic remedy," motions to strike are generally disfavored and require the moving party to "clearly show that the challenged matter has no bearing on the subject matter of the litigation." *Lamoureux v. AnazaoHealth Corp.*, 250 F.R.D. 100, 102 (D. Conn. 2008) (quoting 2 Moore's Federal Practice § 12.37 (2d ed. 2007)). In order to succeed on a motion to strike, the movant carries the burden of establishing "that (1) there is no question of fact that might allow the defense to succeed; (2) there is no substantial question of law that might allow the defense to succeed; and (3) they would be prejudiced by the inclusion of the defense." *Walters v. Performant Recovery, Inc.*, 124 F. Supp. 3d 75, 78 (D. Conn. 2015) (explaining that "[m]ost courts, including the majority in this District, evaluate motions to strike under [this] three-factor test"); *see also GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (discussing these factors).

The first two factors examine the factual and legal sufficiency of the asserted defense. The Second Circuit has recently clarified that "the plausibility standard of [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007),] applies to determining the sufficiency of" an affirmative defense for the purpose of a motion to strike, "but with the recognition that, as the Supreme Court explained in [*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)], applying the plausibility standard to any pleading is a 'context-specific' task." *GEOMC Co., Ltd.*, 918 F.3d at 98. For the purpose of evaluating these two factors, the nature of the affirmative defense is "relevant to the degree of rigor appropriate for testing the pleading of an affirmative defense." *Id.*

After determining the sufficiency of the defense, the court next determines whether the inclusion of the defense would prejudice the plaintiff. This determination often depends on whether the defense was timely presented. In particular, "[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation," but "prejudice may be considered and, in some cases, may be determinative, where a defense is presented beyond the normal time limits of the Rules, especially at a late stage in the litigation[.]" *Haxhe Props., LLC v. Cincinnati Ins. Co.*, No. 3:20-CV-01594 (KAD), 2021 WL 229110, at *2 (D. Conn. June 4, 2021) (quoting *GEOMC Co*, 918 F.3d at 98–99). *See also Walters*, 124 F. Supp. 3d at 79 (explaining that "[i]ncreases in the time and expense of trial and discovery demands" may establish sufficient prejudice to strike a defense). Ultimately, motions to strike are left to "the district court's sound discretion." *Fed. Deposit Ins. Co. v. Raffa*, 935 F. Supp. 119, 123 (D. Conn. 1995).

B. <u>Discussion</u>

1. Legal & Factual Sufficiency

Plaintiffs have not carried their burden to show that there are no questions of fact or law that might allow Defendant's fourteenth affirmative defense to succeed. Accordingly, these factors counsel against striking the defense.

The Court considers the legal sufficiency of the defense first. Plaintiffs emphatically argue that the defense should be stricken because, while it is valid against FLSA claims, the CMWA provides no comparable defense. Defendant contends, on the other hand, that the availability of this defense under the FLSA may trigger federal preemption of Plaintiffs' state law claim, such that the defense is validly raised. The parties' briefing makes clear that the question of whether preliminary or postliminary activities are exempted from compensable time under the CMWA presents a complex issue of statutory interpretation not properly resolved on the present motion to strike.

To determine the legal viability of Defendant's fourteenth affirmative defense, the Court will be called upon to determine whether the FLSA preempts the CMWA by way of an "irreconcilable conflict" between the two statutes, meaning that the CMWA "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of" the FLSA. *Pac. Cap. Bank, N.A. v. Conn.*, 542 F.3d 341, 351 (2d Cir.2008) (quoting *United States v. Locke*, 529 U.S. 89, 109 (2000)); *Marentette v. Abbott Labs., Inc.*, 886 F.3d 112, 117 (2d Cir. 2018) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). That determination requires examining the relevant provisions of the CMWA to ascertain whether they afford lesser or greater protection to employees than the relevant provisions of the FLSA. *See Sarrazin v. Coastal, Inc.*, 311 Conn. 581, 594 (2014) (citing *Overnite Transp. Co. v. Tianti*, 926 F.2d 220, 222 (2d Cir. 1991)). Specifically,

"state laws that provide less protection than guaranteed under the FLSA are in irreconcilable conflict with it and are preempted; state laws that provide the same or greater protection than that provided by the FLSA are consistent with the federal statutory scheme and are thus not preempted." *Sarrazin*, 311 Conn. at 594.

Relevant here, the FLSA, 29 U.S.C. § 254(a), provides that an employer is not required to pay employees straight or overtime wages for (1) traveling to and from the place of "performance of the principal activity" of the job, and (2) "activities which are preliminary to or postliminary to said principal activity[.]" Defendant's fourteenth affirmative defense rests on the exemption contained in § 254(a)(2). Plaintiffs claim that "[t]here is simply no question" that the CMWA contains no statutory equivalent to § 254(a)(2) of the FLSA, and, thus, the CMWA is more protective of employees than the FLSA. ECF No. 23-1 at 18. In Plaintiffs' view, because the CMWA provides greater protection to employees than does the FLSA, the CMWA will not be preempted by the FLSA. But it is clear to the Court that this legal question requires further legal and factual analysis, and that a motion to strike the affirmative defense is premature.

In *Sarrazin*, the Connecticut Supreme Court considered CWMA regulations that, like § 254(a)(1) of the FLSA, exempted travel time from being compensable. *Sarrazin*, 311 Conn. at 603. To ultimately conclude that the FLSA conferred greater protection and thus preempted the CMWA with respect to the travel time exemption, the court conducted a rigorous and detailed analysis of Connecticut statutes and regulations. *Id*. Given that the FLSA appears to treat equally the travel time exemption of § 254(a)(1) and the preliminary and postliminary activities exemption of § 254(a)(2), the question of whether § 254(a)(2) preempts the CMWA likely requires a similarly detailed review of state regulations implementing the CMWA. Plaintiffs have pointed the Court

to no controlling authority answering this question or otherwise definitively precluding the proposed affirmative defense.

Instead, rather than provide this detailed review of state regulations implementing the CMWA, Plaintiffs rest entirely on the silence of the Connecticut legislature and decisions concerning wage laws from other jurisdictions. These decisions do not, however, conclusively resolve the precise preemption issue presented here. For the purpose of surviving the present motion to strike, Defendant need only raise a "substantial question of law that might allow the defense to succeed[.]" *New England Health Care Emp. Welfare Fund v. iCare Mgmt., LLC*, 792 F. Supp. 2d 269, 288 (D. Conn. 2011) (citation and internal quotation marks omitted). Here, the complex and open-ended statutory interpretation analysis demonstrated by *Sarrazin*, as well as the general disfavor of striking defenses, together counsel against resolving the preemption issue at this juncture. In other words, the present motion to strike is an improper vehicle to resolve the preemption issue because Defendant has raised a substantial question of law that requires significant statutory and regulatory interpretation and analysis. Accordingly, the legal sufficiency of the defense weighs against striking it.

For similar reasons, the factual sufficiency of the defense weighs against striking it. As an initial matter, although Defendant does not plead any particular facts in support of this defense, the Second Circuit has explained that the plausibility standard of *Twombly* and *Iqbal* turns on the specific context of the case and generally applies with less rigor to an affirmative defense. *GEOMC Co., Ltd.*, 918 F.3d at 98. Here, Defendant's fourteenth affirmative defense essentially contends that the same exact actions central to Plaintiffs' complaint—the security screenings Plaintiffs allegedly underwent when entering and exiting the warehouses—are not compensable

under federal or state wage law. Considering this defense in context, it clearly requires no further factual pleading to be plausible under *Twombly* and *Iqbal*.

Defendant has also identified several issues of fact that may bear on whether the fourteenth affirmative defense will be successful. These include, among others, the security procedures utilized at the various facilities, the length of time it takes employees to pass through the checkpoints, and the length of time it takes employees to travel from checkpoints to their work stations. Importantly, these issues of fact will bear on the legal question of preemption, as they pertain to the scope of both the applicable FLSA and CMWA provisions.

Considering the FLSA first, activities that are preliminary or postliminary to the principal work activity are compensable, notwithstanding § 254(a)(2), "if those activities are an integral and indispensable part of the principal activities for which [the employees] are employed." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 30 (2005) (citing *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)). An activity is integral and indispensable if it "is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 35 (2014). Under this standard, courts will examine the preliminary or postliminary activity at issue and the nature of the job together, a notably "fact-dependent inquiry." *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011); *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 592–93 (2d Cir. 2007). With respect to the CMWA, the question of whether the activities are compensable turns on not only the complex statutory and regulatory interpretation discussed above, but also the CMWA's definition of "work." Specifically, courts have held that this definition includes time the employee spends "predominately for the employer's benefit." *Sarrazin*, 311 Conn. at 589; *see also Belgada v. Hy's Livery Serv., Inc.*, No. X07CV196137189S, 2021 WL 4480857, at *3 (Conn. Super. Ct. Apr. 13,

2021). Like the federal defense under § 254(a)(2), the compensability of Plaintiffs' alleged activities under the CMWA requires a careful and fact-intensive examination of the activity at issue and the nature of the job.

Accordingly, to determine whether the security screenings are compensable under the FLSA and CMWA, and thus to compare whether the CMWA affords greater or lesser protection as part of the preemption analysis, the Court will need to parse the facts related to the security screenings, Defendant's work requirements, and Plaintiffs' employment performance. While the primary question at issue in Plaintiffs' motion to strike is the legal viability of the affirmative defense under Connecticut law, the Court is unconvinced that, at this preliminary stage of the case, there are no questions of fact to be resolved that might allow the affirmative defense to succeed. Thus, the legal and factual sufficiency of Defendant's fourteenth affirmative defense both weigh against striking it.

2. Prejudice

Finally, Plaintiffs fail to establish any prejudice arising from the inclusion of this defense. Most importantly, the defense was properly raised in Defendant's timely-filed answer, ECF No. 20. *See GEOMC Co., Ltd.*, 918 F.3d at 98 ("[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation"). Here, the activities potentially subject to the defense are the same activities for which the Plaintiffs seek compensation, so inclusion of this defense will not expand the scope of the litigation, require Plaintiffs to conduct significant or late-stage discovery, or otherwise delay the proceedings of the case. The minimal prejudice to Plaintiffs weighs against striking the defense.

10

In sum, all three factors weigh against striking Defendant's fourteenth affirmative defense, consistent with the general disfavor of striking affirmative defenses. *See Lamoureux*, 250 F.R.D. at 102. Accordingly, the Court DENIES Plaintiffs' motion to strike, ECF No. 23.

### III. PLAINTIFFS' MOTIONS TO MODIFY THE SCHEDULING ORDER AND AMEND THE COMPLAINT

As explained above, Plaintiffs seek to amend the complaint to add similar allegations pertaining to Defendant's two additional warehouses located in Wallingford and Stratford. ECF No. 35. Plaintiffs also filed a related motion to modify the Scheduling Order, ECF No. 39, which impacts the legal standard governing the motion to amend the complaint. As such, the Court considers the two motions together.

#### A. Legal Standard

As the Second Circuit has explained, "[t]he ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022). "At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission." *Id.* After that period ends, the plaintiff may amend the complaint only after obtaining the defendant's consent or the leave of the court. Rule 15(a)(2), a liberal standard, instructs the court to "freely give leave when justice so requires." Generally, a court will deny a proposed amendment pursuant to Rule 15(a)(2) only due to bad faith, futility, or prejudice to the opposing party. *See id.*

If the district court "issues a scheduling order setting a date after which no amendment will be permitted," however, then any request by the plaintiff to amend the complaint is governed by the stricter "good cause" standard set forth in Rule 16(b)(4). *See Sacerdote*, 9 F.4th at 115.

11

Whether good cause exists generally "depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

Here, the Court's Scheduling Order states that any motion to amend the complaint or join parties filed after the deadline of January 31, 2022, would be governed by the good cause standard set forth in Rule 16. ECF No. 19 at 1. Accordingly, Plaintiffs' motion to amend the complaint, filed nearly four months after this deadline, would appear to be governed by the good cause standard of Rule 16.

Recognizing the applicability of the stricter standard, Plaintiffs have moved *nunc pro tunc* to extend this deadline from January 31, 2022, to June 24, 2022. ECF No. 39. Such an extension would effectively cure the untimely nature of their motion to amend the complaint, meaning that the motion would be governed by the more permissive standard of Rule 15. In requesting this extension, Plaintiffs represent that the parties are already conducting discovery on the two additional warehouses, and that the extension of this one deadline would not adversely affect the pace of discovery in the case.

The Court notes that a *nunc pro tunc* motion to extend the amendment deadline should not be used as a vehicle to evade a scheduling order deadline and Rule 16's good cause standard. Here, however, Defendant has not filed an opposition to Plaintiff's *nunc pro tunc* motion. Moreover, in opposing Plaintiffs' motion to amend the complaint, Defendant only cursorily cites the good cause standard of Rule 16, and focuses primarily on the standard set forth in Rule 15 to argue that the proposed amendment is the result of undue delay and would cause prejudice. In the absence of objection by Defendant to Plaintiff's *nunc pro tunc* motion and the Defendant's apparent belief that Rule 15 should govern the motion for leave to amend, the Court grants Plaintiffs' *nunc pro tunc* motion to extend the deadline to request leave to amend the pleadings, ECF No. 39.

As such, Plaintiffs' motion to amend the complaint will be governed by the "liberal and permissive standard" set forth in Rule 15(a)(2). *Sacerdote*, 9 F.4th at 115. Denial of leave to amend will be proper only if Defendant shows "undue delay" or "undue prejudice"; some manner of improper purpose, such as "bad faith" or "dilatory motive"; or futility of the proposed amendment. *Id.*; *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000). *See also Aboah v. Fairfield Healthcare Servs., Inc.*, No. 3:20-CV-763 (SVN), 2022 WL 443253, at *4 (D. Conn. Feb. 14, 2022) (noting that the party opposing a motion to amend bears the burden).

### B. Discussion

Defendant does not contend that the proposed amendment is the result of bad faith or dilatory motive, nor that it would be futile. Rather, Defendant contends that the motion to amend follows an undue delay because it was filed four months after Plaintiffs discovered the basis for the amendment. Similarly, Defendant contends that it would face significant prejudice from the amendment. The Court disagrees.

Regarding Plaintiffs' delay in seeking to amend, the Court acknowledges Plaintiffs' representation that they discovered the basis for the amendment some time before requesting leave to amend. Specifically, Defendant's answer, affirmative defenses, and initial disclosures, all dated around January of 2022, advised Plaintiffs that Defendant intended to call certain employees at the Wallingford and Stratford warehouses as witnesses. ECF No. 35 at 3. Plaintiffs represent that this advised them as to the nature of the security procedures at those warehouses and those procedures' similarity to the ones at the four warehouses where the named Plaintiffs worked. Without explanation, Plaintiffs waited four months from discovering this information to request leave to amend. While this delay is not insignificant, neither is it so undue as to warrant denying leave to amend. Considering the timeline of this case as originally scheduled, the motion was filed about

13

halfway through discovery; since the motion was filed, the discovery deadline was extended by two months.  This is not a circumstance where the proposed amendment came well after the discovery deadline, for example, on the precipice of trial or dispositive motions.  *See State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (reversing district court's denial of motion to amend complaint where, "[a]t the time [the] plaintiffs requested leave to amend, no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants").

Similarly, the Court is not convinced that Defendant would suffer a high degree of prejudice from the proposed amendment.  In evaluating prejudice, courts in this circuit consider whether the proposed amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute[.]"  *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  The Court doubts that amending the complaint to add claims pertaining to the two additional warehouses would require substantial additional fact discovery, particularly given that Defendant intends to call witnesses from those two warehouses anyway.  The theory of liability with respect to those two warehouses appears to be the same, so the proposed amendment would not meaningfully expand the nature of the action.  Although the proposed amendment would increase the size of the class, Plaintiffs have not yet moved for class certification, so the amendment would not require the parties or the Court to revisit the scope or definition of a class that has already been determined.  *See Fluor Corp.*, 654 F.2d at 856 (reasoning that the "defendants' assertion that further delay would result from the necessity to redefine the class is unavailing" because the proposed amendment did not dramatically alter the class).

At present, approximately three months remain until the close of discovery. Defendants' protestation that Plaintiffs' proposed amendment would increase the burden of discovery or cause further delay in the case is unpersuasive. Such argument is conclusory—nearly every amendment to a pleading impacts the scope of discovery, yet Rule 15 directs district courts to freely permit amendments so that claims are decided by the merits rather than technicalities. *See Monahan*, 214 F.3d at 283 (quoting *Foman v. Davis*, 371 U.S. 178, 181–82 (1962)). Here, Defendant has not explained how it would suffer *undue* prejudice to overcome this liberal and permissive standard. Nor has it identified any improper motive or futility to justify denying leave to amend. "Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Fluor Corp.*, 654 F.2d at 856.

Accordingly, the Court GRANTS Plaintiffs' motion to amend the complaint, ECF No. 35.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Strike, ECF No. 23, is DENIED. Plaintiff's Motion to Modify the Scheduling Order, ECF No. 39, is GRANTED. Plaintiff's Motion to Amend the Complaint, ECF No. 35, is GRANTED. The Clerk is directed to separately docket the First Amended Complaint, ECF No. 35-2. The Court will schedule a status conference to discuss the schedule and other needs of the case.

**SO ORDERED** at Hartford, Connecticut, this 29th day of September, 2022.

                          */s/ Sarala V. Nagala*
                          SARALA V. NAGALA
                          UNITED STATES DISTRICT JUDGE