## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUZANNE ALFONSO, STEVEN SLATER, JOSHUA ADKINS, and ROBERT DUQUETTE, *individually and on behalf of those similarly situated*, Plaintiffs, | ) ) ) ) ) | 3:21-CV-01644 (SVN) |
| v. | ) ) | |
| FEDEX GROUND PACKAGE SYSTEM, INC., Defendant. | ) ) ) ) | March 8, 2024 |

## RULING ON PLAINTIFFS' MOTION TO PRECLUDE EXPERT TESTIMONY AND MOTION FOR CLASS CERTIFICATION

Sarala V. Nagala, United States District Judge.

In this putative class action, four former employees of Defendant FedEx Ground Package System, Inc. ("Defendant," or "FedEx") claim it violated the Connecticut Minimum Wage Act ("CMWA") by failing to compensate them and others similarly situated for time spent going through required security screening and time spent walking from security screening areas to time clocks where they clocked in and out.

Before the Court are two motions filed by Plaintiffs, both opposed by Defendant. First, Plaintiffs move pursuant to Federal Rules of Evidence 702, 401, and 403 to preclude certain portions of the expert reports of Defendant's expert, Robert Crandall, as well as any associated testimony. Second, Plaintiffs move for certification of a class pursuant to Federal Rule of Civil Procedure 23. For the reasons described below, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion to preclude Mr. Crandall's testimony, and GRANTS Plaintiffs' motion for class certification, with a minor modification to the class definition.

I.      **BACKGROUND**

A.  Plaintiffs' Claims

The CMWA requires employees to be paid for all "hours worked," which is defined in part as "all time during which an employee is required by the employer to be on the employer's premises . . ." *See* Conn. Gen. Stat. § 31-76b(2)(A).  Plaintiffs originally filed this action in state court, alleging a CMWA violation because employees at FedEx locations in South Windsor, Windsor, Middletown, and Willington, Connecticut, were not paid for time spent passing through security screening, which they claim routinely took approximately fifteen minutes a day, and sometimes much more, for each employee.  Compl., ECF No. 1 at 25–26.  After FedEx removed the case, the Court granted Plaintiffs leave to file the operative First Amended Complaint ("FAC"), which added facilities in Stratford and Wallingford to the list of FedEx locations where security screening time was allegedly not compensated.[1]  Am. Compl., ECF No. 52 ¶ 17.  Neither complaint explicitly alleged that Plaintiffs should have been—and were not—compensated for time spent walking from security screening checkpoints to a timeclock where they punched in to begin their workday, though Plaintiffs' claims have evolved to include this contention as well.

Plaintiffs' theory of liability, discussed in greater depth below, boils down to the contention that, because all members of the proposed class were required to "be on the employer's premises" in order to go through security and to walk from security checkpoints to time clocks, and then walk from time clocks to actual workstations, all that time constitutes hours worked, for which Plaintiffs and all putative class members should have been paid under the CMWA.  Defendant vigorously disputes the legal validity of this theory, arguing that neither security nor walking time is

---

[1] There are three facilities in Stratford.  *See* Pls.' Mot. to Preclude Expert Testimony Ex. D, PegArch Architecture & Design Services Report, ECF No. 65-4 at 3.  Throughout the record, the Willington facility is interchangeably referred to as the Hartford facility, and the Wallingford facility is also referred to as the North Haven facility.  *See, e.g., id.* at Ex. A, Crandall Decl., ECF No. 65-1 at 11 n. 11; Def's. Opp. Br. to Motion for Class Cert., ECF No. 79 at 9 n. 10-11.

compensable under the CMWA, and that, even if any of this time was theoretically compensable, the facts here demonstrate that the time was so *de minimis* (often on the scale of seconds) as to be rendered non-compensable.

    B.  <u>Plaintiffs' Motion for Class Certification</u>

Following the close of discovery, Plaintiffs seek certification of a class, defined as follows:

> All current and former employees of Defendant who were employed as hourly, non-exempt workers at FedEx's Windsor, South Windsor, Middletown, Wallingford, Stratford, and Willington, Connecticut facilities at any time from August 1, 2018 through the date of final judgment in this matter.

> Excluded from this class are the following categories of hourly workers:  Operation Managers in any Stratford location and Operations Administrators at FedEx's West Stratford warehouse located at 550 Long Beach Blvd.[2]  ECF No. 80 at 11.

The class definition proposed by Plaintiffs originally encompassed at least 20,000 employees across FedEx's eight Connecticut facilities, *see* Pls.' Memo. of Law In Supp. of Mot. for Class Cert., ECF No. 73 at 12, and has grown to nearly 35,000 employees during the course of the litigation, *see* ECF No. 79 at 4, 16.

*1.  Security Screening and Clocking In Processes*

Each of the eight facilities had a security screening process that required most employees to pass through security on their way into and out of the building.  The general requirements of this process are outlined in FedEx's security screening policy, which provides that "[a]ll individuals entering or exiting a FedEx Ground station or hub may be subject to security screening."  *See* Pls.' Cert. Mot. Ex. Q, FedEx Security Screenings Policy, ECF No. 73-17 at 2. The layout of security and the devices employed at security checkpoints vary somewhat—for instance, a metal detector may be either hand-held or walk-through, and four of the eight facilities

---

[2] Plaintiffs amended the class definition they originally proposed to exclude certain categories of workers, apparently in response to FedEx's evidence that these workers do not have to go through security.  *See* Pls.' Reply Br., ECF No. 80 at 11 n. 9.

have "random selection technology" that subjects only some employees to a security check on their way out of the building—but all facilities have "some form of security checkpoint." ECF No. 79 at 8–10.

After employees pass through security, they can clock in or out of their shift at a time clock using their employee identification badge. *See* Pls.' Cert. Mot. Ex. P, FedEx My Time Clock Guidelines, ECF No. 73-16 at 2. Employees are paid only for the time between clocking in and out. There is no compensation for time prior to clocking in, and that time is not recorded in any records. *See* ECF No. 73 at 14. While some employees may go straight from security to clocking in, others chose to use the time between going through security and clocking in for personal pursuits, such as eating a meal or socializing, *see* ECF No. 79 at 14–16. Under FedEx's timekeeping policy, employees should not enter their designated work area earlier than three minutes before the start of their shift, ECF No. 73-16 at 2, and most hourly employees are not allowed to clock until approximately five minutes before their shift. ECF No. 79 at 33 n. 42.

Each facility has at least two and as many as fifteen time clocks, *see* ECF No. 65-4 at 3–4, and there are no requirements regarding which clock an employee has to punch in or out at. *See* ECF No. 79 at 32. Some employees clock in and out on a computer rather than a time clock. *See, e.g*, *id.* at Ex. 36, Gonzalez Decl. ¶ 16; Pls.' Cert. Mot. Ex. A, Alfonso Dep. Tr. at 21:1–3. After clocking out, employees again had to pass through a security screening, sometimes at the same screening area where they entered and sometimes at a different area, depending on the facility. *See* ECF No. 65-4 at 3–4.

## 2. *Expert Reports*

During expert discovery, the parties agreed to engage PegArch Architecture & Design Services, to measure various distances in the eight FedEx facilities in Connecticut, including the

distance between security areas and each time clock in a respective facility.[3]  *See* ECF No. 65-4 at 6–13.  In total, 124 routes were measured.  *Id.*

Plaintiffs then retained two experts.  The first, Dr. Robert Radwin, converted each PegArch measurement into a walking time using the Methods-Time-Measurement ("MTM") time system.  *See* Pls.' Precl. Mot. Ex. E, Radwin Report, ECF No. 65-5 at 4, 6–16.  The walking times range from about 14 seconds at the West Stratford facility, up to more than six minutes at the Middletown facility.  *See id.* at 10, 12.  The second, Dr. Leisl Fox, created a damages model based on Dr. Radwin's walking times, timekeeping data, and assumptions about the length of time spent in security.  *See* Pls.' Precl. Mot. Ex. F, Fox Report, ECF No. 65-6 at 4.  More specifically, Dr. Fox was able to "match" a majority of timekeeping records, which showed which time clock had been used to clock in and out, to the times calculated by Dr. Radwin for that particular time clock.  *Id.* For records that could not be matched, Dr. Fox chose the minimum walking time for that location, as calculated by Dr. Radwin.  *Id.*  Dr. Fox then assumed security times of 30, 40, 50, and 60 seconds per shift, added these onto the walking times, and multiplied by an employee's hourly rate (straight or overtime) to demonstrate the compensation owed for security and walking time.  *See id.* at 4, 9–11.

FedEx also hired an expert, Mr. Robert Crandall, M.B.A.  To prepare his initial declaration, Mr. Crandall reviewed 164 hours of security footage from the seven facilities that had such

---

[3] The number of time clocks range at the eight facilities.  West Stratford has two clocks; Windsor has three clocks; North Stratford has four clocks; Wallingford/North Haven, South Windsor, and Stratford each have five time clocks; and Hartford/Willington and Middletown each have fifteen clocks.  ECF No. 65-4.  The number of entrances and exits also varies—while some facilities have only one, others have a separate entrance and exit.  *See generally id.*  In addition, at least two of the facilities have an entirely separate building that houses security.  *See generally id.*

footage.[4]  *See* ECF No. 65-1 at 6, 14.  He also "received timekeeping data" from all eight facilities

in Connecticut, and reviewed case-related documents.  *See id.* at 6.  He concluded, based on this

review, that the average time spent going through security was 29.5 seconds upon entrance, and

9.3 seconds upon exit.  *Id.* at 7.  He also found that a majority of employees did not spend any time

waiting at security, and that, when they did, the average wait time was 18.7 seconds upon entrance

and 8.8 seconds upon exit.  *Id.* at 8.  In his report, he describes these results, in addition to the

variations observed in the security process, related to time of day, interactions with security guards,

bringing a bag or not bringing a bag, and other factors.

Mr. Crandall also prepared a rebuttal declaration in response to the reports submitted by

Drs. Radwin and Fox.  The rebuttal report does not contest the methodology used by PegArch or

Dr. Radwin.  *See* Pls.' Precl. Mot. Ex. B, Crandall Rebuttal Decl., ECF No. 65-2 at 5.  Primarily,

it points out variations that Dr. Radwin's and Dr. Fox's reports do not or cannot account for, such

as whether the paths measured by PegArch were the actual paths taken by employees, and critiques

the assumptions on which Plaintiffs' expert's reports are based, such as the assumption in Dr.

Fox's model that every employee encountered some security wait time.

In accordance with the Scheduling Order, Plaintiffs moved to preclude portions of Mr.

Crandall's declarations before moving to certify a class.  These motions are addressed in turn, and

any additional background information necessary is included in the sections below.

---

[4] These hours of footage were selected from among the following days of footage in June 2022: three days from the Willington/Hartford facility, three days from the Middletown facility, one day from the Wallingford/North Haven facility, three days from the South Windsor facility, one day from the Stratford facility, one day from the West Stratford facility, and three days from the Windsor facility.  *See* ECF No. 65-1 at 14, 54.  Additionally, after cameras were installed in a new security area in Windsor in September 2022, Mr. Crandall viewed footage from that month. *Id.* at 14 n. 17.

## II.      MOTION TO PRECLUDE

Plaintiffs move to preclude certain paragraphs of Mr. Crandall's expert declarations primarily on the basis that they "largely opine[] that individualized issues preclude class certification in this case," and are therefore improper legal opinion.  *See* Pls.' Precl. Mot., ECF No. 65 at 4.  Plaintiffs also argue that certain paragraphs must be excluded because they are not based on sufficient facts and data, unduly prejudicial, improper expert opinion, irrelevant, and contrary to law.  Defendant responds that Plaintiffs' motion is premature and that, in any case, every paragraph challenged meets the standard for the admission of expert testimony.

Plaintiffs' motion does not clarify whether it seeks to preclude consideration of this evidence by the Court in considering Plaintiffs' motion for class certification (which was filed after the motion to preclude), or by a potential future jury deciding this case.  With respect to the latter, the Court agrees with Defendant that Plaintiffs' motion is premature; therefore, the Court assesses Plaintiffs' motion only with respect to what must be precluded at the class certification stage.

For the reasons below, Plaintiffs' motion is GRANTED in part and DENIED in part.  To the extent it is denied, the denial is without prejudice to renewal at a later stage of the litigation.

### A.  Legal Standard

Federal Rule of Evidence 702 provides that a qualified expert "may testify in the form of an opinion" if the proponent of the expert demonstrates to the court that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.

The district court performs a "gatekeeping" function in deciding whether the expert's testimony is admissible under Rule 702, *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), one that operates within the "liberal standard of admissibility" embodied by Rule 702. *See Nimely v. City of New York*, 414 F.3d 381, 395–96 (2d Cir. 2005). In performing this function, and in addition to determining that an expert witness is qualified and reliable, the court must determine that the expert's testimony will "assist the trier of fact." *See id.* at 397. In order for an expert's testimony to be helpful to the trier of fact under Rule 702(a), it (1) cannot provide a legal opinion that "usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying the law to the facts before it," *see id.* (citing *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (cleaned up); and (2) "must be helpful to the jury in comprehending and deciding issues beyond the understanding of a layperson," *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005). In addition to being admissible under Rule 702, expert testimony must also be relevant, consistent with Federal Rule of Evidence 401, and more probative than prejudicial, consistent with Federal Rule of Evidence 403. *See Nimely*, 414 F.3d at 396–97.

Although it is "still an open issue whether and to what extent a district court should conduct a *Daubert* analysis at the class certification stage," district courts regularly undertake such analyses, when required. *See, e.g.*, *In re Teva Sec. Litig.*, No. 3:17-CV-558 (SRU), 2021 WL 872156, at *10 (D. Conn. Mar. 9, 2021); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 470–71, 473 (S.D.N.Y. 2018) (collecting cases discussing question and performing *Daubert* analysis).

### B.  Discussion

Plaintiffs do not challenge Mr. Crandall's qualifications, the reliability of the principles and methods he utilized, or his application of those principles and methods. Instead, their

challenges arise under Rule 702(a) and (b), Rule 403, and Rule 401.  The Court addresses Plaintiffs' objections to Mr. Crandall's opening and rebuttal declarations in turn.

### 1.  Objections to the Opening Crandall Declaration

As noted above, in order to prepare his opening declaration, Mr. Crandall primarily reviewed security video footage from the seven FedEx facilities in Connecticut that had such footage.  *See* ECF No. 65-1 at 6.  This footage captured employees entering inbound security more than 2,900 times and exiting outbound security approximately 2,650 times.  *Id.* at 7.  The purpose of conducting this review was to "assess[] Plaintiffs' claims that employees were delayed by the security process at FedEx Ground facilities in Connecticut," and to "estimate delay time associated with the security process on entrance and exit," if any, including the frequency and duration of such delays.  *Id.* at 5.  He concluded, based on the review of video footage, that the average time spent going through security was 29.5 seconds for inbound security, and 9.3 seconds for outbound security.  *Id.* at 7.  His report further opines on the variations observed in the security process between facilities and within the same facility, such as the variations in how much time the security process took in each facility, *id.* at 35, or the difference in security time in facilities that had different screening technology, *id.* at 47.

Plaintiffs object to only three paragraphs of Mr. Crandall's opening declaration, on two grounds:  that one paragraph is supported by insufficient facts or data and is unfairly prejudicial, and that two paragraphs are improper legal opinion.  The Court disagrees with Plaintiffs as to the first ground, but agrees as to the second.

### a.  Sufficiency of Facts or Data and Unfair Prejudice

Plaintiffs move to preclude paragraph 10 of Mr. Crandall's report, which, in essence, states that, if Defendant "pays to the minute," then differences on the scale of seconds in time spent in

security and walking could be "inconsequential" to an employee's pay. *See* ECF No. 65-1 at 10. Plaintiffs argue this paragraph is based on insufficient facts or data, in violation of Rule 702(b), because Mr. Crandall stated in his deposition—without being presented with the timekeeping records contemporaneously—that he was not sure if the "punch records" "ha[d] seconds or not," as he had "only used [them] to identify number of people at various facilities, roughly." *See* Pls.' Precl. Mot. Ex. C, Crandall Dep. Tr. at 62–63. In addition, they claim the paragraph is unfairly prejudicial in its suggestion that Defendant may have "already paid its workers for their walking and security time." *See* ECF No. 65 at 10.

On the record before it, the Court cannot conclude that this portion of Mr. Crandall's opinion is so "speculative or conjectural" to warrant exclusion. *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). The report cites to two depositions for this information, *see* ECF No. 65-1 at 10, and states that, to prepare his report, he "received timekeeping data," *see id.* at 6. Although that timekeeping data has not been presented to the Court in connection with this motion, the Court is not prepared to presume that the timekeeping data does not support Mr. Crandall's conclusion solely on the basis of his not being able to recall the data during his deposition, especially where Plaintiffs do not argue that Mr. Crandall's statement that FedEx pays to the minute is incorrect as a factual matter.[5] Plaintiffs are free to renew their motion at a later stage if they can demonstrate that this testimony is truly speculative and not based on evidence in the record. *See Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19-CV-0054 (JCH), 2022 WL 594096, at *11, *25 (D. Conn. Feb. 28, 2022) (finding one opinion "speculative" where it was "unsupported by the record or [expert's] own report," and another opinion neither

---

[5] The Court notes that, though it does not consider this as evidence of whether the statement in the report meets the standard of Rule 702, counsel for FedEx stated at oral argument that his understanding is that FedEx does, in fact, pay to the minute.

speculative nor conjectural where it was "formed . . . on the basis of [expert's] observations of 'objective evidence'").

In addition, the Court rejects Plaintiffs' argument that this paragraph creates unfair prejudice. If Defendant does pay to the minute, then the suggestion that a matter of seconds may have already been compensated may be relevant to Defendant's theory of damages—a theory that Plaintiffs can certainly challenge, but that cannot be said to unfairly prejudice them, especially at this early juncture. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Accordingly, Plaintiffs' motion to exclude paragraph 10 of Mr. Crandall's declaration is DENIED, without prejudice to renewal.

b. Legal Opinion

Plaintiffs also move to exclude paragraphs 27 and 51 of Mr. Crandall's opening declaration on the basis that these paragraphs are legal opinions which are, by definition, not helpful to the trier of fact and therefore inadmissible under Rule 702.

Plaintiffs somewhat exaggerate the language in Mr. Crandall's declaration when they suggest that he opines that "Plaintiffs cannot prove predominance," *see* Pls.' Reply Br., ECF No. 74 at 3, and that "individualized issues make liability impossible to determine on a class-wide basis," *see* ECF No. 65 at 10. Mr. Crandall's report does not go quite that far, though it does point out potential difficulties in class-wide liability determinations. Paragraph 27, for instance, after pointing out that certain security screenings involved "no delay time," and that the presence of a security guard "does not guarantee that subjects undergo security checks," notes that "an analysis attempting to make liability determinations for these subjects based on a one-size-fits-all model could yield highly inaccurate or uncertain results," and that the "video observation data reveals

meaningful variation in experiences within the proposed class."  ECF No. 65-1 at 25.  Paragraph 51 concludes two preceding paragraphs, which describe two observations of abnormally long security times, by stating that "these examples also show that any longer security times . . . would likely not be caused by a systematic process on the part of FedEx," but may be "one-off individual instances that would need to be examined on a case-by-case basis to determine the total amount of delay, if any, that could be contributed to FedEx."  *Id.* at 48–49.

Although it is a close call, the Court finds that these paragraphs should be precluded. Although it is "perfectly appropriate" for Mr. Crandall to "identify variations in the evidence," as he does throughout his report, paragraph 27 takes the extra step of providing "his expert opinion on what that means for the plaintiffs' case," by opining that a one-size-fits-all model "could yield highly inaccurate or uncertain results."  *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 48 (S.D.N.Y. 2016) (analyzing the admissibility of Mr. Crandall's testimony in another case and precluding portions that take this extra step).  In *Scott*, Mr. Crandall was precluded from offering an opinion that used very similar language as he used here:  that a "one-size-fits-all liability determination would likely result in considerable error."  *Id.*  Mr. Crandall's slight revisions do not change that this observation reads more like legal argument than expert opinion.  Likewise, it is one thing (and permissible) to point out that the longest wait times observed were the result of anomalous individual behavior; it is another thing to extrapolate from that observation to conclude that *any* longer wait times would "likely" be caused by individual behavior, and "need to be examined" individually to determine FedEx's liability, *see* ECF No. 65-1 ¶ 51—this "reads more like lawyer's argument," and purports to apply the law to fact in a way that is not permissible.  *See Scott*, 315 F.R.D. at 49.  Accordingly, paragraphs 27 and 51 are precluded.

### 2. *Objections to the Rebuttal Crandall Declaration*

While Mr. Crandall's opening declaration dealt exclusively with security times, and primarily detailed the findings from his video observations, the purpose of his rebuttal declaration was to "review and respond to the expert reports" of Drs. Radwin and Fox who "collectively have proffered a damages methodology associated with Plaintiffs' walking time and security check claims." *See* ECF No. 65-2 at 4. The rebuttal declaration does not "critique PegArch's methodology or competence" for measuring the relevant distances in the various facilities, nor Dr. Radwin's "method of converting distances to time," or "assumption for walking speed." *Id.* at 5. What it does do is "discuss the extent" of variations in walking time in the data, the "variation in clocking patterns," and the "analytical implications that would result from the Court" determining that all or some walking time is compensable or "setting a fact pattern based threshold for liability." *Id.* at 6. It generally concludes that Plaintiffs' experts "fail[] to address any questions related to the uniformity of experiences among employees or account for" potential arguments advanced by FedEx regarding what time is compensable. *Id.* Throughout, it repeatedly emphasizes that the validity of Plaintiffs' experts' reports as a tool for measuring damages will be impacted by the Court's legal determinations. *See e.g.*, *id.* at 7, 9, 13.

Plaintiffs challenge far more of Mr. Crandall's rebuttal declaration than his opening declaration, and the Court agrees with Plaintiffs that the rebuttal declaration, as a general matter, is more problematic, especially with respect to the legal opinions therein. The Court takes each of Plaintiffs' arguments in turn.

### a. <u>Non-Expert Opinions</u>

Plaintiffs argue that paragraphs 3, 4, 19, and 23 of Mr. Crandall's rebuttal report are inadmissible expert opinions because the trier of fact, without the expert's knowledge or

assistance, could draw the same conclusions drawn therein.  Defendants counter that these paragraphs are proper because they streamline or synthesize data, which is helpful to the jury.

Paragraphs 3 and 4 are part of the Introduction section of Mr. Crandall's rebuttal declaration.  Paragraph 3 outlines the purposes of the declaration, and paragraph 4 concludes that, if certain assumptions were changed based on a future legal determination, "the only direction Plaintiffs' experts' numbers can go is down."  Paragraphs 19 and 23 both make essentially the same point—that Dr. Radwin's analysis potentially overestimates walking time because it includes walking time prior to entrance into and after exit from the facilities.

The Court does not find at this juncture that these paragraphs constitute non-expert testimony.  Although Dr. Radwin's and Dr. Fox's reports are not particularly lengthy or difficult to understand, *see* ECF Nos. 65-5 and 65-6, Mr. Crandall's critiques are still helpful to the trier of fact in "synthesiz[ing]" certain issues, which could save the jury time.  *See Precision Trenchless, LLC*, 2022 WL 594096, at *27.  Particularly in the context of a rebuttal report, which can be "intended solely to contradict or rebut evidence" testified to by an opposing expert, *see* Fed. R. Civ. P. 26(D)(ii), these opinions are appropriate.  *See also Scott*, 315 F.R.D. at 47 (recognizing that the role of a rebuttal expert is "to undermine the soundness of the plaintiffs' experts' conclusions," and allowing testimony that "attack[ed] the probative value of plaintiffs' experts' opinion").  Accordingly, Plaintiffs' motion to preclude paragraphs 3, 4, 19, and 23 Mr. Crandall's rebuttal report as non-expert testimony is DENIED, without prejudice to renewal.

b. Materiality

Plaintiffs argue that paragraphs 4, 7, 8, 9, 17, 18, 20, 25, and 26 of Mr. Crandall's rebuttal report, which discuss individual variations in the data[6] and the potential implications of these variations for Plaintiffs' claims, must be excluded because "Plaintiffs calculated damages to prove the amount of time they 'necessarily spent' walking from the entrances and exits and each time clock," and are therefore "not suing for all the time they spent walking or undergoing security screenings."  ECF No. 65 at 14; *see also id.* at 15 (arguing that Mr. Crandall's testimony about variations is immaterial because "Plaintiffs, through their damages calculations, excluded the 'variations' that could be caused by personal choices") (emphasis removed).  In other words, Plaintiffs argue that, because they are claiming damages only for the amount of time it *should have taken* an employee to walk from security to a time clock, and not the time it *actually took*, the variations in the walking process or in walking times are immaterial.

The Court finds that this argument is premature, in that it is premised on the Court's acceptance of Plaintiffs' theory of liability and damages.  At this juncture, the Court agrees with FedEx that expert testimony on the variation among potential class members is highly relevant to the question of whether a class can be certified, *see Scott*, 315 F.R.D. at 48 (recognizing that it is "perfectly appropriate" for Mr. Crandall to "identify variations in the evidence"), and, under FedEx's theory of damages, to the potential future question of how much is owed to Plaintiffs. *See* Def's Opp. Br., ECF No. 71 at 19; *see also In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 661 (2d Cir. 2016) (recognizing that an expert's testimony should be analyzed within the context of a

---

[6] In their reply brief, Plaintiffs "limit[ed] their motion to exclude the 'variations' paragraphs to those dealing solely with walking time," recognizing the relevance of Mr. Crandall's testimony regarding the variations in the security process.  ECF No. 74 at 3.  As far as the Court can discern, of the paragraphs addressed in this section, only paragraph 26 deals with both security and walking time; however, since it is not clear as to which paragraphs Plaintiffs intended to abandon their motion, the Court addresses paragraph 26 in this section in an abundance of caution.

party's theory).  Because it has relevance to these questions, and because the Court has not yet had

an occasion to accept or reject Plaintiffs' (or Defendant's) theories of the case, Plaintiff's motion

is denied as to these paragraphs, without prejudice to renewal.

c.   Legal Opinions

Plaintiffs next object to paragraphs 10, 11,[7] 12, 13, 14, 25, 26, and 41, and their

corresponding section headings, as improper legal opinions.  Here again, Plaintiffs at times

overstate Mr. Crandall's opinions when they characterize them as "stat[ing] that individualized

liability questions overwhelm common issues" or that "factual variations preclude class

certification."  ECF No. 74 at 6.  While Mr. Crandall makes no such statement directly, the Court

agrees with Plaintiffs that much of the testimony in Crandall's rebuttal declaration constitutes

inappropriate legal opinion.  For instance, Mr. Crandall repeatedly makes inappropriate if-then

suggestions—"if" the Court makes a certain legal determination "then" a certain legal or factual

problem will arise.  *See, e.g.*, ECF No. 65-2 at 9 ¶ 10 ("If the Court were to accept an all or nothing

proposition regarding whether the pre-shift and/or post-shift time is compensable, then the

analytical challenges are greatly reduced."); *id.* at 12 ¶ 12 ("[I]f not all commute time is

compensable, then the fact that commute time can be measured does not necessarily mean that

elements of commute time should be added onto a shift duration and converted into an estimate of

damages."); *id.* at 13 ¶ 14 ("Thus, if the Court were to adopt a duration-based test, there are likely

to be considerable percentages of employees who would fall below even relatively low time

thresholds.").  Mr. Crandall's explicit "deference [to the Court] notwithstanding," *see Scott*, 315

---

[7] Plaintiffs stated at oral argument that they had abandoned their arguments related to paragraph 11.  This may be on the basis that paragraph 11 relates only to security time.  *See* ECF No. 74 at 3 (abandoning motion as to paragraphs that deal with security time).  However, Plaintiffs' submissions were not clear on this point, as in another section of their reply brief they specifically argue that paragraph 11 must be excluded as an improper legal opinion.  *See id.* at 4.  Accordingly, the Court addresses paragraph 11 in this opinion.

F.R.D. at 48, the Court finds that these and other portions of Mr. Crandall's testimony "usurp[] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying the law to the facts before it," *see Nimely*, 414 F.3d at 397 (citation omitted), and therefore warrant exclusion. Other parts of Mr. Crandall's analysis which purport to opine on what kind of analysis is "required" to determine liability and damages, *see, e.g.*, ECF No. 65-2 at 9 ¶ 11, likewise must be excluded. *See Scott*, 315 F.R.D. at 48 (excluding portions of Mr. Crandall's testimony that provided an opinion on what variations "mean[] for the plaintiffs' case"); *see also Utne v. Home Depot U.S.A., Inc.*, No. 16-CV-01854-RS, 2022 WL 1443338, at *3 (N.D. Cal. May 6, 2022) (excluding as improper legal opinion portions of Mr. Crandall's testimony that "there are individualized issues that cannot be managed without collecting detailed individualized facts and data"). Although it is a close question, the Court finds that some of the headings and certain portions of the challenged paragraphs are permissible, as they identify variations in the data, summarize aspects of Plaintiffs' expert's reports, or identify perceived deficiencies in Plaintiffs' expert reports, without taking the extra step of opining as to their legal significance. Accordingly, the Court does not find that the entirety of all challenged paragraphs and corresponding headings must be stricken, and strikes only the following portions of the rebuttal declaration:

- The heading of section III.D;

- The first four sentences, and the last sentence, of paragraph 10;

- The first sentence of paragraph 11, and the portion of paragraph 11 from "The information from the study could be used by the Court . . ." to ". . . it finds appropriate;"

- The last sentence of paragraph 12;

- The penultimate sentence of paragraph 14;

- The last two sentences of paragraph 25;

- The entirety of paragraph 26; and

- The second sentence of paragraph 41.[8]

### d. Relevance

Plaintiffs next argue that paragraphs 12 and 22 of the rebuttal declaration are irrelevant. Paragraph 12 describes other hypothetical commute times in other employment settings, leading to the conclusion that "if not all commute time is compensable, then the fact that commute time can be measured does not necessarily mean that elements of commute time should be added onto a shift duration." Paragraph 22 points out potential flaws in Dr. Radwin's opinion that employees likely took more time to walk from security to the respective time clocks than his estimates reflect. Defendant argues that paragraph 12 is helpful to the trier of fact to "understand what occurs at a FedEx Ground facility," *see* ECF No. 71 at 23 n.16, and does not respond to Plaintiffs' argument regarding paragraph 22.

The Court agrees with Plaintiff that paragraph 12 is irrelevant. In order for evidence to be relevant, it must have "any tendency to make" a "fact [] of consequence" "more or less probable." Fed. R. Evid. 401. The Court cannot discern, nor has Defendant offered any explanation of, how a hypothetical comparison to commutes "in other employment settings" could be relevant to the determination of this action. *See* ECF No. 65-2 at 11–12.[9] The paragraph does not, as Defendant suggests, do anything to help explain "what occurs at a FedEx Ground facility," *see* ECF No. 71 at 23 n.16, as it does not discuss what happens at a FedEx facility at all. Moreover, even if it did,

---

[8] The Court notes the same defects identified in these paragraphs are present in other paragraphs that Plaintiffs do not specifically challenge as improper legal opinion. *See, e.g.*, ECF No. 65-2 at 6 ¶ 4; *id.* at 16 ¶ 21. The Court declines to *sua sponte* preclude all such paragraphs of Mr. Crandall's rebuttal declaration, but notes that it does not consider any improper legal opinion in its decision on class certification.

[9] For the reasons discussed above, the Court finds that the last sentence of paragraph 12 is also excludable as improper legal opinion.

it is not clear that that potentially relevant information would be the appropriate province of *expert* testimony.  Accordingly, Plaintiffs' motion is GRANTED with respect to paragraph 12.

On the other hand, the Court does not find that paragraph 22 is irrelevant as, like the testimony Plaintiffs challenge as non-expert, it appropriately "attack[s] the probative value of plaintiffs' experts' opinions." *See Scott*, 315 F.R.D. at 47.  Plaintiffs' motion is therefore DENIED with respect to paragraph 22.

e.  Contrary to Law

Lastly, Plaintiffs argue that, because paragraphs 10, 11, 12, 13, 14, 35, and 41 are contrary to *their* theories of liability, including with respect to what constitutes hours worked, and their interpretation of the *de minimis* defense, they must be excluded as "contrary to law."  *See* ECF No. 65 at 19–23.  For instance, Plaintiffs argue that paragraph 41, which points out the variation in walking times (and therefore allegedly uncompensated time) underlying Dr. Fox's model, and notes that some employees may be over or under what is considered *de minimis* time,[10] is contrary to law because there is "no support" under Connecticut law that compensable time "hinges on a specific duration."  ECF No. 65 at 23.  The Court rejects as premature all of Plaintiffs' arguments that certain portions of Mr. Crandall's report are "contrary to law," as the Court has not had occasion to decide the validity of Plaintiffs' theories of liability through any dispositive motion practice.[11]  *See Olin Corp.*, 2018 WL 1901634, at *21 ("[A]n expert's testimony should be

---

[10] The Court has precluded this portion of paragraph 41 as improper legal opinion.

[11] Plaintiffs make the cursory suggestion in a footnote that "the court can decide the legal questions presented in this motion," while simultaneously recognizing that the Court "has not adjudicated the legal validity of any of the parties' claims or defenses."  *See* ECF No. 65 at 19 n.7.  As the Court has received no briefing devoted to the legal questions raised by the parties in connection with the motions before the Court, and deciding the legal issues is not necessary to a decision on the motions, the Court disagrees with Plaintiffs' suggestion that it can determine the legal issues presented at this juncture.  *See Olin Corp. v. Lamorak Ins. Co.*, No. 84-CV-1968 (JSR), 2018 WL 1901634, at *21 (S.D.N.Y. Apr. 18, 2018) (denying motion to exclude expert declaration in light of the fact that relevant legal issues had not been decided by the time of submission); *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013) (holding that certain merits questions "should not be resolved in deciding whether to certify a proposed class," but are "properly addressed at trial or in a ruling on a summary-judgment motion").

excluded on [the] ground [that it is contrary to controlling law] only where an argument has already been rejected by the Court.").  Accordingly, this portion of Plaintiffs' motion is DENIED.

In sum, Plaintiffs' motion to preclude, ECF No. 65, is GRANTED IN PART AND DENIED IN PART, for the reasons discussed above.  The Court does not consider any precluded portion of Mr. Crandall's reports in its decision on class certification below.

### III.    MOTION FOR CLASS CERTIFICATION

For the reasons discussed below, the Court finds that certification of a class is appropriate and accordingly GRANTS Plaintiffs' motion for certification of the class.

#### A.    Legal Standard

A plaintiff seeking certification bears the burden of establishing by a preponderance of the evidence that the proposed class meets the requirements of Federal Rule of Civil Procedure 23.  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013).  First, a court must engage in a "rigorous analysis," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011), to ensure a plaintiff's proposed class satisfies the four prerequisites common to all class actions under Rule 23(a):  (1) that the class is "so numerous that joinder of all members is impracticable;" (2) that there are "questions of law or fact common to the class;" (3) that the named plaintiffs' claims are "typical of the claims . . . of the class;" and (4) that the named plaintiffs "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  The Second Circuit has also held that there is an "implied" requirement of ascertainability:  the class must be "defined using objective criteria that establish a membership with definite boundaries."  *See In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017).  In addition, a party seeking certification of a class under Rule 23(b)(3), as here, must demonstrate that the common questions of law or fact "predominate over

any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Any order certifying a class must define the class, appoint class counsel, and order notice to the class. Fed. R. Civ. P. 23(c)(1)(B), (c)(2)(B). The Court is not "bound by the class definition proposed," *see Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993), and may, but need not, consider alternative ways of structuring the class "on its own initiative," *see Adkins v. Morgan Stanley*, 656 F. App'x 555, 557 (2d Cir. 2016) (summary order) (citation omitted).

The Supreme Court has recognized that determining class certification frequently will "entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart*, 564 U.S. at 351, while also cautioning that "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," *Amgen Inc.*, 568 U.S. at 466; *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 117 (noting that courts must make a "definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues") (citation omitted). In other words, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466; *see also* Adv. Comm. Notes, 2003 Amendment, Fed. R. Civ. P. 23 (noting that "an evaluation of the probable outcome on the merits is not properly part of the certification decision").

### B.  Merits-Based Arguments

As an initial matter, the Court rejects Defendant's invitation to consider the legal sufficiency of Plaintiff's claims at the class certification stage. Defendant spends a large portion of its opposition brief arguing that Plaintiffs' claims fail as a matter of law because security and

walking time is not compensable under the CMWA and, regardless, the time spent engaged in these activities was *de minimis*.

Whether or not Defendant's failure to pay for security or walking time violates the CMWA is a legal question, the answer to which the Court should not determine at the class certification stage where—as here—such a determination is not necessary to assessing whether the Rule 23 requirements have been met.  *See Amgen*, 568 U.S. at 466; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006), *decision clarified on other grounds on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007) (holding that district court must make Rule 23 determinations even when "a merits issue" is "identical with a Rule 23 requirement," but that, " in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement"); *Guadagna v. Zucker*, 332 F.R.D. 86, 92 (E.D.N.Y. 2019) (noting that it is "beyond well-settled that a motion for class certification is not a vehicle for deciding the merits of the case," and that the "dispositive question" is "whether the requirements of Rule 23 have been met").  Although Defendant contends Plaintiffs need to demonstrate a "common *unlawful* practice," *see* ECF No. 79 at 17 (emphasis in original), in order to demonstrate class certification is warranted, courts regularly certify classes where the legality of a practice is an open question.  *See, e.g.*, *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 89 (2d Cir. 2015) (affirming district court's certification of a class where common issues included "whether defendants' practice of filing affidavits of merit . . . with respect to the plaintiff class members" violated a statute); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (affirming district court's certification of a class where a common question was whether the "compensation policies and tipping practices" of employer violated New York labor law); *Lassen v. Hoyt Livery Inc.*, No. 3:13-CV-01529 (JAM), 2014 WL 4638860, at *9 (D. Conn.

Sept. 17, 2014) (certifying class where the "central dispute" was whether defendants' "compensation policy violated the CMWA"); *Guadagna*, 332 F.R.D. at 94 (certifying class where common question of law existed regarding "whether a statutory or constitutional mandate existed" that made defendant's behavior unlawful, but declining to answer that question).

Defendant appears to suggest that Plaintiffs' claims are so clearly contrary to law that class certification would be inappropriate,[12] without citation to authority to support this is a defense to class certification. While the Court will closely consider any such arguments in a properly briefed motion for summary judgment—which Defendant has opted not to pursue at this time—they are ultimately somewhat beside the point when deciding class certification in this case. The Court will not deny Plaintiffs' motion for certification simply because Defendant believes Plaintiffs' theory fails as a matter of law. *See Guadagna*, 332 F.R.D. at 92 (noting that the court would address the defendant's merits arguments "only to the extent they overlap with questions pertinent to Rule 23," and would address the "legal viability" of the plaintiff's claims at summary judgment).

    C.  <u>Class Certification Requirements</u>

The Court next turns to the Rule 23 class certification requirements, and finds that they are met here.

---

[12] With respect to security time, Defendant points to federal precedent holding this time non-compensable, to Connecticut cases supporting the proposition that the CMWA sought to emulate the federal Fair Labor Standards Act ("FLSA"), and to *Del Rio v. Amazon.com Servs., Inc.*, No. 3:21-CV-1152 (KAD), 2023 WL 6141140 (D. Conn. Sept. 20, 2023), in which Judge Dooley (notably, on summary judgment) determined that time spent in security was not compensable under the CMWA. As for the walking time claim, Defendant likewise has not pointed to any Connecticut authority on this issue, but reiterates its contention that the CMWA mirrors federal law, which would exclude this time. Lastly, with respect to Defendant's *de minimis* defense, Defendant analogizes to *de minimis* cases in the FLSA context, and points out that Connecticut regulations provide that "[w]orking time in every instance shall be computed to the nearest unit of fifteen minutes," to argue that the time here is necessarily *de minimis* and therefore non-compensable. *See* ECF No. 79 at 21–22 (citing Conn. Agencies Regs. § 31-60-11).

### 1. *Numerosity*

The proposed class definition encompasses at least 20,000 current and former employees, *see* ECF No. 73 at 23, and as many as 35,000, *see* ECF No. 79 at 4, 16.  Defendant does not contest that Plaintiffs have demonstrated the numerosity required by Rule 23(a)(1).  Indeed, these numbers are plainly sufficient to satisfy numerosity, as joinder of this many individuals would be impracticable.  Fed. R. Civ. P. 23(a)(1); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").

### 2. *Commonality*

"The commonality requirement is met if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  This common question of law or fact must "be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.  "Minor factual differences will not preclude class certification if there is a common question of law." *Macedonia Church v. Lancaster Hotel Ltd. P'ship*, 270 F.R.D. 107, 116 (D. Conn. 2010).

Here, Plaintiffs have identified at least two common questions of law:  (1) whether security time is compensable under the CMWA; and (2) whether walking time is compensable under the CMWA.  In addition, Plaintiffs have identified common policies:  Defendant does not pay employees for any time prior to clocking in, and it requires the putative class members to go through a security screening area upon entry and exit.  The legal questions presented are "capable of classwide resolution," without consideration of exactly how much time any plaintiff spent in security or walking. *See Wal-Mart*, 564 U.S. at 350.  As discussed above, the Court finds that Plaintiffs need not demonstrate at this stage that their claims are legally viable; it is sufficient that

they raise common issues of legal viability under the CMWA.  *See, e.g.*, *Lassen*, 2014 WL 4638860, at *9, *12 (finding commonality met where "central dispute" was whether defendants' policy of not paying for certain time "violated the CMWA," where court had not yet determined which unpaid activities "constitute[d] compensable work time"); *Guadagna*, 332 F.R.D. at 94 (finding commonality where "[r]esolving [the] legal dispute" between the parties "will conclusively resolve the Defendant's liability to the class as a whole, favoring certification"); *see also Davis v. Target Corp.*, No. CV 23-89, 2023 WL 8373162, at *3 (E.D. Pa. Dec. 1, 2023) (commonality met where "class members share the important common question of whether time spent walking from the building entrance to the time clocks and back again is compensable" under Pennsylvania's Minimum Wage Act).

### 3.  *Typicality*

Next, the Court finds that the typicality requirement is satisfied.  Defendant argues that the claims of the named plaintiffs are not typical for several reasons:  (1) Plaintiff Alfonso was an administrative employee "who did not punch a time clock but rather punched in on her computer;" (2) the named plaintiffs were employed for varying amounts of time; (3) they are all former employees; and (4) they worked at only four of the eight facilities encompassed in the class definition.  ECF No. 79 at 41.  The Court rejects these arguments.

"Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Robidoux*, 987 F.2d at 936.  "[M]inor variations in the fact patterns underlying individual claims" do not undermine typicality "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented."  *Id.* at 936–37.

The named Plaintiffs' claims are typical of those of the class they seek to represent. Although Plaintiff Alfonso may have not punched in at a time clock, she was subject to the same policy requiring her to go through security screening, she would have spent some time walking to and from her work post, and she, like all other employees, was not paid for any time prior to clock-in. The duration of the named plaintiffs' employment likewise is of no moment, as there is no claim that they were not subject to the practices that are the target of this litigation. *See Lassen*, 2014 WL 4638860, at *10 (noting that "differences in damages will not destroy typicality," and pointing out that defendants had not proffered "factual or legal defenses to this claim that are applicable to plaintiff but atypical of the putative class"). In addition, the fact that there is not a named plaintiff to represent each of the eight facilities is a "variation[] in the fact pattern[]," that does not change the fact that Plaintiffs bring the same central claims as their class members in challenging the failure to pay for security and walking time. *See Robidoux*, 987 F.2d at 937; *see also Marisol A.*, 126 F.3d at 379 (noting that a named plaintiff would properly represent a subclass where they were "aggrieved under" the "discrete legal claims which are at issue").

### 4. Adequacy of Representation

The Court finds the adequacy of representation requirement met here. Adequacy of representation is demonstrated when "it appears that plaintiff's interests are not antagonistic to those of the class it seeks to represent and plaintiff's counsel is qualified to conduct the litigation." *Macedonia Church*, 270 F.R.D. at 118 (citation omitted). Neither the parties nor the Court have identified any conflict between the named plaintiffs and the putative class members. Indeed, there does not appear to be any, where all plaintiffs' claims rest on the same basic theories of recovery, and no group has incentives to undermine the recovery of any other group. In addition, as

discussed in more detail below, plaintiffs' counsel is patently qualified. Accordingly, the requirements of Rule 23(a)(4) are met.

Having found the requirements of Rule 23(a) met, the Court now turns to the requirements for certification of a Rule 23(b)(3) class: predominance and superiority.

### 5. Predominance

The predominance requirement for certifying a Rule 23(b)(3) class action is "satisfied if (1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues are more substantial than the issues subject only to individualized proof." *In re Petrobras Sec.*, 862 F.3d at 270 (internal quotation marks and citation omitted) (cleaned up). Common questions are those where "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted) (cleaned up). Although Rule 23 does not require a plaintiff to demonstrate that "each element of her claim is susceptible to classwide proof," it does require that those "common questions predominate over any questions affecting only individual class members." *Amgen*, 568 U.S. at 469 (citations omitted) (cleaned up). This exercise includes the consideration of affirmative defenses. *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 54 F.4th 115, 121–22 (2d Cir. 2022). "[I]ndividualized damages determinations alone cannot preclude certification under Rule 23(b)(3)," but "damages questions should be considered at the certification stage when weighing predominance issues." *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 408, 409 (2d Cir. 2015).

The Court finds that Plaintiffs have satisfied their burden of demonstrating predominance here. As discussed above, Plaintiffs' claims present common legal questions as to the compensability of security and walking time. The evidence submitted by both parties in

27

connection with their motion for class certification demonstrates the existence of a common policy that subjected all individuals included in the class definition to security screenings upon entry to and exit from a facility.[13]   In addition, there is no dispute that all employees had to walk, albeit varying distances, from security to their clock-in destination.   Thus, the "same evidence will suffice for each member to make a prima facie showing" that they were subject to the security policy and incurred walking time, and the legal questions are capable of classwide resolution based primarily on this classwide evidence, in addition to the legal analysis of whether this was time employees were "required" to be on the premises, such that it can constitute "hours worked" under the CMWA.  *See Del Rio*, 2023 WL 6141140, at *3–*6 (determining as a matter of law that time spent going through security screening was not compensable under the CMWA).   In addition, whether the *de minimis* defense, Defendant's primary affirmative defense, can be applied to Plaintiffs' CMWA claims is another common question that can be litigated on a class-wide basis. *See Ornelas v. Tapestry, Inc.*, No. C 18-06453 WHA, 2021 WL 3471173, at *6 (N.D. Cal. Aug. 6, 2021) (noting that "question of whether the *de minimis* defense is even applicable [to state law claim] is a common and predominating one").   These three legal questions will apply to the whole class, and ultimately predominate over the individualized issues.

To be sure, there are individual questions in this litigation.   In particular, how much time an employee actually spent going through security and walking to a time clock or punch station, and whether that time is *de minimis* (and therefore non-compensable) may require a more individualized analysis.   There is no doubt a wide variation in the available routes taken by

---

[13] Plaintiffs appropriately excluded from their modified class definition hourly employees who were not subject to security screening at three of the FedEx facilities. *See, e.g.*, Def's Opp. Br. Ex. 29, Evans Decl., ECF No. 79-3 at 126 (administrators use a different door and do not go through security); *id.* at Ex. 27, Ellis Decl., ECF No. 79-3 at 116 (operations manager did not go through security); *id.* at Ex. 67, Sampson Decl., ECF No. 79-5 at 36 (administrative employees did not go through entrance with security).   All other evidence submitted, including all employee and manager declarations, supports Plaintiffs' assertions that all other hourly employees were required to (and did) go through security screening at each facility.

employees and times those routes took to walk based on the expert reports—as many as 124 routes, ranging from a few seconds to potentially up to 12 or more minutes in a day.  Plaintiffs have provided expert reports, however, which demonstrate how Plaintiffs would seek to demonstrate liability (as to the potential *de minimis* question) and damages through representative proof.  *See* ECF No. 65-5 (providing walking times for 124 routes); ECF No. 65-6 (matching time clock data to those routes and, where matching was not possible, choosing minimum walking time in that facility, in addition to making assumptions about security time).  To the extent Defendant will challenge these reports as "unrepresentative or inaccurate," that in itself is a defense "common to the claims made by all class members."  *See Tyson Foods*, 577 U.S. at 457.

The Court agrees with Plaintiffs that the factual matter of the time spent in security and walking time generally goes to damages, and therefore cannot "alone" preclude certification. *Roach*, 778 F.3d at 409.  While the application of the *de minimis* defense may be relevant to liability as to each individual plaintiff's claim, the Court does not find that these individualized liability and damages issue are "more substantial" in this case than the threshold liability issues capable of class-wide determination.  *See In re Petrobras Sec.*, 862 F.3d at 270.  For instance, the Court notes that the question of the application of the *de minimis* defense to individual plaintiffs would not need to be reached if the threshold liability determinations of the compensability of security and walking time under the CMWA were answered in Defendant's favor.  Thus, the Court does not find that issues surrounding the *de minimis* defense predominate over the common questions of liability.

Other individualized variations that Defendant points out also do not overcome the predominance of the common questions, as these variations again go to damages and do not impact the common liability questions.  For instance, Defendant emphasizes variations in the equipment

used for security screenings at the various facilities, how what an employee brings with him or her may impact his or her time in security, and how employees varied in whether they took time to eat or pursue other activities between going through security and clocking in.   While these questions could impact the time an employee spent engaged in the challenged activities, and therefore damages and the applicability of the *de minimis* defense, they are ultimately insufficient to outweigh the common questions, and, in any event, their relevance may be obviated by the answers to the common liability questions.   *See Ornelas*, 2021 WL 3471173, at *5–6 (variations in application of security policy did not defeat predominance where majority of employees were subject to common security policy at least one time); *see also Lassen*, 2014 WL 4638860, at *11– 12 (noting that "[p]redominance is often satisfied in wage and hour cases because liability is usually a common issue, and the only individualized questions involve damages calculations," and finding that predominance was satisfied because "[o]nce it is determined which types of activities are compensable and how to calculate the hours for which a driver should have been compensated, damages for each driver will be a mere question of 'arithmetical calculations'") (citation omitted); *Headly v. Liberty Homecare Options, LLC*, No. 3:20-CV-00579 (OAW), 2022 WL 2181410, at *16 (D. Conn. June 16, 2022) (finding predominance met because the "predominant questions are questions of law common to all the claims").   Accordingly, the Court finds the predominance requirement met here.

### 6.  *Superiority*

So, too, is a class action the superior mechanism for deciding Plaintiffs' claims.   Under Federal Rule 23(b)(3), the Court must find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   The Second Circuit has rejected an "administrative feasibility test," for superiority, recognizing that, although "a court may not

ignore concerns about the manageability of a putative class action, it may be that challenges of administrative feasibility are most prevalent in cases 'in which there may be no realistic alternative to class treatment.'" *See In re Petrobras Sec.*, 862 F.3d at 268 (citation omitted).  In addition, the Supreme Court has recognized that, when creating the 23(b)(3) class action mechanism, the Advisory Committee "had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all," due to the potential for only a small recovery.  *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

The Court finds that superiority is met here.  The individual recoveries here may be quite small, a fact that Defendant does not dispute.  *See* ECF No. 79 at 42.  This weighs in favor of superiority, as it regularly does in wage-and-hour claims.  *See, e.g., Lassen*, 2014 WL 4638860, at *12 (finding superiority where "the relatively modest damages that might be recovered by any single [class member] would likely make the cost of individual litigation prohibitive"); *see also Davis*, 2023 WL 8373162, at *6 (finding that "large class size, the modest individual claims, and the largely unifying legal issues" were sufficient for superiority).  Defendant's contentions regarding inferiority of a class action largely go to manageability concerns which, while relevant, can be ameliorated by the district court's authority to manage the litigation effectively, including, if necessary, "bifurcat[ing] the proceedings to home in on threshold class-wide inquiries."  *See In re Petrobras Sec.*, 862 F.3d at 274.

### 7. *Ascertainability*

Plaintiffs contend that Defendant's records clearly establish who was employed by Defendant as an hourly, non-exempt employee during the relevant time period, and Defendant does not contest that the proposed class is ascertainable.  The criteria that class members be non-

exempt employees, at defined facilities, meets the Second Circuit's standard for ascertainability, as these are "objective criteria" with "definite boundaries." *See id.* at 257.

### 8. *Class Definition*

As noted above, the Court finds that Plaintiffs appropriately excluded from their class definition hourly employees who were not subject to the security screening policy. *See* n.13.[14] The Court makes only a minor modification to the proposed class definition to clarify that these employees are only excluded with respect to the time they spent in the various operations positions, as discussed at oral argument. *See In re Petrobras Sec.*, 862 F.3d at 274 (emphasizing district court's authority to "implement management strategies" for class actions, including "modifying class definitions"); *see also Martinez v. Avantus*, LLC, 343 F.R.D. 254, 264 (D. Conn. 2023) (modifying class definition to ensure all class members had suffered the same alleged injury). Accordingly, the Court defines the class as follows:

> All current and former employees of Defendant who were employed as hourly, non-exempt workers at FedEx's Windsor, South Windsor, Middletown, Wallingford, Stratford, and Willington, Connecticut facilities at any time from August 1, 2018 through the date of final judgment in this matter.

> Excluded from this class are the following categories of hourly workers: Operation Managers in any Stratford location and Operations Administrators at FedEx's West Stratford warehouse located at 550 Long Beach Blvd, <u>during the time they held such roles</u>.

### 9. *Appointment of Class Counsel*

Having certified a class as defined above, the Court appoints as class counsel the law firm of Hayber, McKenna & Dinsmore, LLC. Federal Rule of Civil Procedure 23(g) requires the court

---

[14] The Court notes that Plaintiffs' proposed definition also excludes these employees as to walking claims, as no distinction is made between security claims and walking claims in the class definition. In light of the fact that Plaintiffs' experts did not measure the routes between the entrances these employees used and their clock-in stations, *see* ECF No. 65-4, the Court finds it appropriate that the walking time claims of these employees are likewise excluded from the class definition.

to consider "the work counsel has done in identifying or investigating potential claims in the action;" counsel's "experience in handling class actions," and the "types of claims asserted in the action," counsel's "knowledge of the applicable law," and the "resources that counsel will commit to representing the class." In addition, class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Attorney Durkin and Attorney Hayber have submitted declarations which satisfy the Court that they meet the requirements for class counsel under Rule 23(g). *See* Pls.' Class Cert. Mot. Ex. Y, Hayber Aff., ECF No. 73-25; *id.* at Ex. Z, Durkin Decl., ECF No. 73-26. Both attorneys have significant experience with disputes of this type, knowledge of wage-and-hour law, and have clearly done significant work already in this case throughout discovery and the preparation of the preclusion and certification motions now before the Court. Their qualifications have not been challenged, and no other applicant seeks the appointment of class counsel. Accordingly, the law firm of Hayber, McKenna & Dinsmore, LLC is appointed as class counsel.

## IV.    CONCLUSION

For the reasons described herein, Plaintiffs' motion to preclude is GRANTED in part and DENIED in part, without prejudice to renewal, and Plaintiffs' motion to certify the class is GRANTED, with the modification to the class definition discussed above.

Accordingly, notice will be provided to putative class members, who will have the opportunity to opt out of the lawsuit if they choose to do so. The notice proposed by Plaintiffs, Pls.' Class. Cert. Mot. Ex. CC, Proposed Notice, ECF No. 73-29, has not been challenged by Defendant, and the Court finds that it contains all of the information required by and otherwise complies with Rule 23(c)(2)(B). Plaintiffs shall modify the class definition in the proposed notice and fill in the date of this Order where appropriate.

In order to facilitate notice to the class, Defendant is ordered to produce a list of class members including their names, last known address, emails, and telephone numbers to Plaintiffs' counsel by **March 29, 2024.** Plaintiffs' counsel is authorized to mail the approved notice to the class members within **21 days** of receiving the updated class list from Defendant. The notice should include a date **30 days** after the date of mailing to allow putative class members to opt out of the class.

Lastly, in accordance with the schedule previously proposed by the parties and adopted by the Court, any dispositive motions shall be submitted by **June 10, 2024.**

**SO ORDERED** at Hartford, Connecticut, this 8th day of March, 2024.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE